

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**LUFKIN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| | § | |
| **VS.** | § | **CASE NO. 9:06-CR-24** |
| | § | |
| **JOHN SCRUGGS** | § | |

<u>**FINDINGS OF FACT AND RECOMMENDATION ON GUILTY PLEA**</u>
<u>**BEFORE THE UNITED STATES MAGISTRATE JUDGE**</u>

The District Court referred this matter to the undersigned United States Magistrate Judge

for administration of a guilty plea and allocution under Rules 11 and 32 of the Federal Rules of

Criminal Procedure. Magistrates have the statutory authority to conduct a felony guilty plea

proceeding as an "additional duty" pursuant to 28 U.S.C. § 636(b)(3).  *United States v. Bolivar-*

*Munoz*, 313 F.3d 253, 255 (5ᵗʰ Cir. 2002), *cert. denied,* 123 S. Ct. 1642 (2003).

On August 11, 2006, this cause came before the undersigned United States Magistrate

Judge for entry of a guilty plea by the Defendant, John Scruggs, on **Count VI** of the charging

**Indictment** filed in this cause.  Count VI of the Indictment charges that on or about  October 25,

2005,  in the Eastern District of Texas, John Scruggs, Defendant herein, did then and there

knowingly possess a firearm, to wit:  a Smith and Wesson, Model Lady Smith, .38 caliber

revolver, bearing serial number BDV4390, during and in relation to a drug trafficking crime for which he may be prosecuted in court of the United States, to wit:  the possession of any equipment, chemical product, or material which may be used to manufacture a controlled substance, knowing, intending, or having reasonable cause to believe, that it will be used to manufacture a controlled substance, in violation of Title 21, United States Code, Section 843(a)(6), all in violation of Title 18, United States Code Section 924(c). *See Indictment.*

Defendant, John Scruggs, entered a plea of guilty to Count VI of the Indictment into the record at the hearing.

After conducting the proceeding in the form and manner prescribed by Federal Rule of Criminal Procedure 11 the Court finds:

a.      That Defendant, after consultation with counsel of record, has knowingly, freely and voluntarily consented to the administration of the guilty plea in this cause by a United States Magistrate Judge in the Eastern District of Texas subject to a final approval and imposition of sentence by the District Court.

b.      That Defendant and the Government have entered into a plea agreement which was disclosed and addressed in open court, entered into the record, and placed under seal.

c.      That Defendant is fully competent and capable of entering an informed plea, that Defendant is aware of the nature of the charges and the consequences of the plea, and that the plea of guilty is a knowing, voluntary and freely made plea.  Upon addressing the Defendant personally in open court, the Court determines that Defendant John Scruggs' plea is voluntary and did not result from force, threats or promises.  *See* FED. R. CRIM. P. 11(b)(2).

d.      That Defendant's knowing, voluntary and freely made plea is supported by an independent factual basis establishing each of the essential elements of the offense and Defendant realizes that his conduct falls within the definition of the crimes charged under 21 U.S.C. § 843(a)(6) and 18 U.S.C. § 924(c).

## STATEMENT OF REASONS

As factual support for Defendant's guilty plea, the government presented the following evidence, which was admitted into the record at the plea hearing.  *See Factual Resume.*  If the case proceeded to trial, the Government and Defendant agreed that the Government would prove,  beyond a reasonable doubt, each and every essential element of the charging offense, specifically that the defendant knowingly and intentionally possessed a firearm during a drug trafficking offense.  The Government would  establish,  through the sworn testimony and evidence, the following facts, as stated in the *Factual Basis:*

On October 25, 2005, Texas Parks and Wildlife officers received a complaint about possible illegal hunting north of Collins Creek on Houston County Road 4565 in Houston County, Texas, in the Eastern District of Texas.  The complainant informed officers that multiple shots had been fired on the property adjacent to complainant's property.  The complainant also stated that this had been going on since September 2005.  The complainant would  testify that several small items had been stolen from his property, including gas, gas cans, tractor parts, and freezer items.

Officers would testify that they went to the location where the shots were heard and came upon a site where three travel trailers were parked.  A hunting tree stand with a corn feeder

hanging on it was located in a tree next to what appeared to be the "main" travel trailer.  Officers

knocked on the door and a female answered "yes".  Approximately five to ten minutes later,

Mariann Henneken answered the door.  When officers asked Henneken about the complaint of

shots fired and illegal hunting, she denied that any hunting had taken place.  Henneken also

stated that she was the only person present.  When asked about guns, Henneken produced a

Mossberg, Model 353T, .22 caliber semi-automatic rifle, bearing serial number 1010536.

Henneken denied that there were any other guns on the property.  Officers requested consent to

look around the property and Henneken consented.  Officers noticed that Henneken did not look

well and was having difficulty standing.

During the inspection of the property, officers found ammunition from a handgun (.38

caliber) and ammunition from a large caliber rifle.  They would also testify that they found

containers of ammonia, xynol, and ethanol.  Officers then asked Henneken if they could search

the trailer for other guns due to the discovery of the ammunition.  Henneken consented.  Inside

the trailer, officers observed a Smith & Wesson, Model 49, .38 caliber revolver, bearing serial

number 16676 and a Marlin, Model 980,  .22 caliber rifle, bearing serial number 69345810.

Officers also noticed many glass containers, including measuring cups, and a cap from a

hypodermic needle.  The firearms and two All Terrain Vehicles ("ATVs") located on the

property were checked to see if they were stolen.  One of ATVs came back stolen in Trinity

County.  At that time, because of their suspicion that the residence was being utilized to

manufacture methamphetamine, the officers requested the assistance of the Houston County

Sheriff's Department.

Officers soon discovered that the Defendant was inside the residence when they saw him briefly exit the residence.  Testimony would show that the Defendant then locked and barricaded himself in the trailer and ignored the officers' orders to exit the residence.  The Defendant had been hiding in the residence when officers first arrived.  Henneken advised the officers that the Defendant had access to a .38 caliber handgun that was still inside the residence.  After several hours, three OC gas devices were deployed into the residence and the Defendant exited approximately 15 minutes later.  The Defendant was wanted on an unrelated outstanding felony warrant and the officers, therefore, arrested him at that time.

Officers would state that they received written consent from Henneken to search the residence and all outbuildings and vehicles located on the property.  Officers located the handgun that Henneken had advised was in the Defendant's possession in a coat hanging on a hook on the door that the Defendant used to exit the trailer.  The search was halted at that time and officers secured the scene.  They then sought and obtained a search warrant for the residence for the following morning.

During the subsequent search of the residence and surrounding property, officers located equipment, chemicals, products, and materials commonly used to manufacture methamphetamine.  Inside the residence officers located match books and a match box with removed striker plates, and digital scales.  On the property, outside the residence, officers located a plastic container that contained a white powder substance, a plastic bottle containing a brown liquid and brown powder substance, a glass jar containing an off-white liquid and an off-white powder substance, a glass bottle containing  a brown liquid and powder substance, and a

plastic bottle containing a brown liquid and powder substance.  Officers also located four 32 ounce bottles of hydrogen peroxide, each approximately three-quarters full, two 64 ounce cans of ammonia, five one gallon cans of Xylene and Naptha, and a one gallon can of acetone outside the residence.   Officers also found marihuana and assorted drug paraphernalia inside the residence.  A total of eleven firearms and ammunition of assorted calibers were discovered in the residence and on the property.

After her arrest, Henneken provided written voluntary statements to officers that she had known the Defendant for three years, and that they had been living in the residence that officers searched for approximately one year.  She stated that the Defendant had been manufacturing methamphetamine at the residence, and that she had seen the Defendant utilizing jars and the microwave to create the finished product.  She also stated that the Defendant would disappear into the woods and return with methamphetamine in plates that he would then dry.  She advised that she had seen methamphetamine in dishes and that there were jars in the microwave when the officers arrived on October 25, 2005.  According to Henneken, the Defendant was her supplier of methamphetamine during the entire time that she had known him.  She admitted to knowing about four guns that the Defendant owned, two .22 caliber rifles, a .38 caliber rifle, and a black handgun that the Defendant carried all of the time.

In addition to Henneken's testimony as stated in the Factual *Resume*, the Government would proffer additional testimony given by Ms. Henneken.  She would further state that Defendant carried the Smith and Wesson, .38 caliber Model Lady Smith handgun with him at all times while he was manufacturing methamphetamine.  When the Court questioned Defendant on

the record at the plea hearing, he agreed with this testimony and admitted that he did carry the Model Lady Smith with him while manufacturing methamphetamine, that he used it during the manufacture of methamphetamine, and that he carried it for protection. Defendant would admit, and the Government would also show, that this is the same Model Lady Smith named in Count VI of the Indictment.

The Defendant also provided a written voluntary statement to officers and admitted that he and Henneken had been living at the residence where they were arrested on October 25, 2005 for approximately one year. He also admitted that he had been manufacturing methamphetamine at the residence and had last manufactured methamphetamine approximately one month before his arrest on October 25, 2005. He also admitted to owning the firearms that were found at the residence.

Karen Reams, a forensic scientist with the Texas Department of Public Safety Crime Lab, analyzed the contents of some of the jars that were found at the residence. She would testify that one of the jars contained 423.45 grams of pseudoephedrine, a key ingredient used in the manufacturing of methamphetamine, and another jar contained 10.42 grams of methamphetamine.

Finally, the Government would show that the Defendant has two prior felony convictions for controlled substance offenses that were committed on separate dates:

-Delivery of Marijuana, which he committed on April 6, 1992, and was convicted of on July 6, 1999 in Cause Number 7764 in the 411th Judicial District Court of Trinity County, Texas; and

-Possession of a Controlled Substance with Intent to Deliver, which he committed on January 28, 1999, and was convicted of on July 6, 1999 in Cause Number 8293 in the 411th Judicial District Court of Trinity County, Texas.

Defendant, John Scruggs, agreed with the above-stated facts. Counsel for Defendant and the Government attested to Defendant's competency and capability to enter an informed plea of guilty.  The Defendant agreed with the evidence presented by the Government and personally testified that he was entering his guilty plea knowingly, freely and voluntarily.

## RECOMMENDED DISPOSITION

**IT IS THEREFORE** the recommendation of the undersigned United States Magistrate Judge that the District Court accept the Guilty Plea of Defendant which the undersigned determines to be supported by an independent factual basis establishing each of the essential elements of the offenses charged in **Count VI** of the charging **Indictment** on file in this criminal proceeding.  The Court also recommends that the District Court conditionally accept the plea agreement.[1]  Accordingly, it is further recommended that, Defendant, John Scruggs, be finally

---

[1] "(3) Judicial Consideration of a Plea Agreement.
(A) To the extent the plea agreement is of the type specified in Rule 11(c)(1)(A) or (C), the court may accept the agreement, reject it, or defer a decision until the court has reviewed the presentence report.
(B) To the extent the plea agreement is of the type specified in Rule 11(c)(1)(B), the court must advise the defendant that the defendant has no right to withdraw the plea if the court does not follow the recommendation or request.
(4) Accepting a Plea Agreement. If the court accepts the plea agreement, it must inform the defendant that to the extent the plea agreement is of the type specified in Rule 11(c)(1)(A) or (C), the agreed disposition will be included in the judgment.
(5) Rejecting a Plea Agreement. If the court rejects a plea agreement containing provisions of the type specified in Rule 11(c)(1)(A) or (C), the court must do the following on the record and in open court (or, for good cause, in camera):
(A) inform the parties that the court rejects the plea agreement;
(B) advise the defendant personally that the court is not required to follow the plea agreement and give the defendant an opportunity to withdraw the plea; and
(C) advise the defendant personally that if the plea is not withdrawn, the court may dispose of the case less favorably toward the defendant than the plea agreement contemplated." FED. CRIM. P. 11(c)(3)-(5).

adjudged as guilty of the charged offenses under Title 18, United States Code, Section  924(c)

and 21 U.S.C. § 843(a)(6).

Defendant is ordered to report to the United States Probation Department for the

preparation of a presentence report.  At the plea hearing, the Court admonished the Defendant

that the District Court may reject his plea and that the District Court can decline to sentence

Defendant in accordance with the plea agreement, the federal sentencing guidelines and/or the

presentence report because the sentencing guidelines are advisory in nature.  The District Court

may defer its decision to accept or reject the plea agreement until there has been an opportunity

to consider the presentence report.  *See* FED. R. CRIM. P. 11(c)(3).  If the Court rejects the plea

agreement, the Court will advise Defendant in open court that it is not bound by the plea

agreement and Defendant may have the opportunity to withdraw his guilty plea, dependent upon

the type of the plea agreement. *See* FED. R. CRIM. P. 11(c)(3)(B).  If the plea agreement is

rejected and Defendant still persists in the guilty plea, the disposition of the case may be less

favorable to Defendant than that contemplated by the plea agreement.  Defendant has the right to

allocute before the District Court before imposition of sentence.

## OBJECTIONS

Within ten (10) days after receipt of this report, any party may serve and file written

objections to the report and recommendation of the Magistrate Judge pursuant to 28 U.S.C. §

636(b)(1)(C).  Failure to file written objections to the proposed findings of facts, conclusions of

law and recommendations contained within this report within ten (10) days after service shall bar

an aggrieved party from *de novo* review by the District Judge of the proposed findings,

conclusions and  recommendations, and from  appellate review of factual findings and legal conclusions accepted by the District Court except on grounds of plain error. *Douglass v. United Serv. Auto. Ass'n.,* 79 F.3d 1415 (5th Cir. 1996) (*en banc*); 28 U.S.C. § 636(b)(1).   The constitutional safeguards afforded by Congress and the courts require that, when a party takes advantage of his right to object to a magistrate's findings or recommendation,  a district judge must exercise its nondelegable authority by considering the actual evidence and not merely by reviewing and blindly adopting the magistrate's report and recommendation.  *See Hernandez v. Estelle,* 711 F.2d 619, 620 (5th Cir. 1983); *United States v. Elsoffer*, 644 F.2d 357, 359 (5th Cir. 1981) (per curiam).

   **SIGNED this the 15th day of August, 2006.**


_____
   KEITH F. GIBLIN
   UNITED STATES MAGISTRATE JUDGE