**UNITED STATES DISTRICT COURT**　　　**EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| *versus* | § | CASE NO. 9:06-CR-24 |
| | § | |
| JOHN SCRUGGS | § | |

### MEMORANDUM AND ORDER

Pending before the court is Defendant John Scruggs's ("Scruggs") *pro se* Motion for Reduction in Sentence (#43), wherein he requests that the court release him from imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A) due to his rehabilitation, a post-conviction change in the applicable sentencing laws, and the threat of the Coronavirus Disease 2019 ("COVID-19"). The Government filed a response in opposition (#46). After conducting an investigation, United States Probation and Pretrial Services ("Probation") recommends denying the motion. Having considered the motion, the Government's response, Probation's recommendation, the record, and the applicable law, the court is of the opinion that the motion should be denied.

I.　Background

On June 6, 2006, a federal grand jury in the Eastern District of Texas returned a nine-count Indictment charging Scruggs in Count 1 with Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1); in Counts 2 through 4 with Possession of an Unregistered Firearm, in violation of 26 U.S.C. § 5861(d); in Count 5 with Possession of Equipment, Chemical, Product, or Material Which May Be Used to Manufacture a Controlled Substance, in violation of 21 U.S.C. § 843(a)(6); and in Counts 6 through 9 with Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c)(1). On August 11, 2006, Scruggs pleaded guilty to the offense charged in Count 6 of the Indictment pursuant to a written plea agreement;

the court later dismissed the remaining counts.  Subsequently, on November 28, 2006, the court sentenced Scruggs to 262 months' imprisonment, to be followed by a five-year term of supervised release.  Scruggs is currently housed at Federal Correctional Institution El Reno ("FCI El Reno"), located in El Reno, Oklahoma.  His projected release date August 3, 2024.

II.   Analysis

On December 21, 2018, former President Trump signed the First Step Act of 2018 into law.  *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194.  The Act, in part, amended 18 U.S.C. § 3582(c), which gives the court discretion, in certain circumstances, to reduce a defendant's term of imprisonment:

> (A) the court, upon motion of the Director of the Bureau of Prisons ("BOP"), or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).  This provision is commonly referred to as "compassionate release."

A.    Exhaustion of Administrative Remedies

Prior to the First Step Act, only the Director of the BOP could file a motion seeking compassionate release.  *See United States v. Franco*, 973 F.3d 465, 467 (5th Cir.) ("Prior to the passage of the First Step Act . . . courts lacked the power to adjudicate motions for compassionate release."), *cert. denied*, 141 S. Ct. 920 (2020); *Tuozzo v. Shartle*, No. 13-4897, 2014 WL 806450, at *2 (D.N.J. Feb. 27, 2014) (denying petitioner's motion for compassionate release because no motion for his release was filed by the BOP).  The First Step Act amended § 3582(c) by providing a defendant the means to appeal the BOP's decision not to file a motion for compassionate release on the defendant's behalf.  *United States v. Cantu*, 423 F. Supp. 3d 345, 347 (S.D. Tex. 2019); *United States v. Bell*, No. 3:93-CR-302-M, 2019 WL 1531859, at *1 (N.D. Tex. Apr. 9, 2019).  The plain language of the statute, however, makes it clear that the court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement.  18 U.S.C. § 3582(c)(1)(A); *United States v. Garrett*, 15 F.4th 335, 337 (5th Cir. 2021) ("[T]o file a proper motion for compassionate release in the district court, a prisoner must first exhaust the available administrative avenues."); *Franco*, 973 F.3d at 467 (holding that the statutory requirement that a defendant file a request with the BOP before filing a motion for compassionate release in federal court "is *not* jurisdictional but that it *is* mandatory"); *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) ("Even though [the] exhaustion requirement does not implicate [the court's] subject-matter jurisdiction, it remains a mandatory condition."); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he exhaustion requirement . . . presents a glaring roadblock foreclosing compassionate release."). Thus, before seeking relief from the court, a defendant must first submit a request to the warden

3

of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request.  18 U.S.C. § 3582(c)(1)(A); *Garrett*, 15 F. 4th at 338 ("[A]n inmate has two routes by which he may exhaust his administrative remedies.  Both begin with 'requesting that the [BOP] bring a motion on the defendant's behalf.'" (quoting *Franco*, 973 F.3d at 467)); *United States v. Harris*, 812 F. App'x 106, 107 (3d Cir. 2020); *United States v. Springer*, 820 F. App'x 788, 791 (10th Cir. 2020) (defendant "was required to request that the BOP file a compassionate-release motion on his behalf to initiate his administrative remedies" (citing *Raia*, 954 F.3d at 595)); *Alam*, 960 F.3d at 833-34; *United States v. Soliz*, No. 2:16-190-3, 2020 WL 2500127, at *3 (S.D. Tex. May 14, 2020) ("§ 3582(c)(1)(A) does not provide this Court with the equitable authority to excuse [defendant's] failure to exhaust his administrative remedies or to waive the 30-day waiting period." (quoting *United States v. Reeves*, No. 18-00294, 2020 WL 1816496, at *2 (W.D. La. Apr. 9, 2020))).

Here, on April 19, 2021, Scruggs submitted a request for compassionate release to the warden of his facility rasing the same issues as the instant motion.  On June 24, 2021, Reduction in Sentence Coordinator J. Rogalsky denied Scruggs's request for failing to provide the requisite information regarding the applicable criteria for seeking compassionate release.  The Government concedes that Scruggs has exhausted his administrative remedies.  Nevertheless, although Scruggs may have complied with the exhaustion requirement before filing the instant motion, nothing in his motion indicates that extraordinary and compelling reasons exist to modify his term of imprisonment.

4

B.    Criteria for Release

The United States Court of Appeals for the Fifth Circuit has held that when a defendant moves for compassionate release, he must establish three criteria. *United States v. Shkambi*, 993 F.3d 388, 392 (5th Cir. 2021).   First, he must meet one of two conditions listed in § 3582(c)(1)(A)—either the defendant has extraordinary and compelling reasons that warrant a reduction under 18 U.S.C. § 3582(c)(1)(A)(i) or the defendant is at least 70 years of age, has served at least 30 years in prison, and meets the additional requirements of 18 U.S.C. § 3582(c)(1)(A)(ii). *Id.* at 391.  Second, the defendant "must show that compassionate release is consistent with the applicable policy statements from the [United States Sentencing Commission ("Commission")]." *Id.* at 392.  Third, the defendant "must convince the district judge to exercise discretion to grant the motion after considering the § 3553(a) factors."[1] *Id.*; *accord United States v. Keys*, 846 F. App'x 275, 276 (5th Cir.), *cert. denied*, 142 S. Ct. 299 (2021); *United States v. Cooper*, 996 F.3d 283, 287 (5th Cir. 2021).

Section 3582(c)(1)(A)(i) does not define the "extraordinary and compelling reasons" that may merit compassionate release.   Rather, Congress elected to delegate its authority to the Commission.  *See* 28 U.S.C. § 994(t) (directing the Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to

---

[1] Section 3553(a) directs courts to consider:  the nature and circumstances of the offense and the defendant's history and characteristics;  the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable United States Sentencing Guideline ("U.S.S.G.") provisions and policy statements; any pertinent policy statement of the Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim.  18 U.S.C. § 3553(a).

be applied and a list of specific examples"); *Cooper*, 996 F.3d at 287; *Shkambi*, 993 F.3d at 392. Prior to the passage of the First Step Act, the Commission issued a policy statement set forth in U.S.S.G. § 1B1.13, which, along with its commentary, describes what reasons qualify as extraordinary and compelling.[2]  However, § 1B1.13 references only motions filed by "the Director of the [BOP]"—not an individual defendant.[3]  Consequently, the Fifth Circuit has held that when a defendant files a motion for compassionate release on his own behalf, the Commission's policy statement set forth in § 1B1.13 is not applicable because that policy statement governs only motions filed by the Director of the BOP.  *See Cooper*, 996 F.3d at 287-88; *Shkambi*, 993 F.3d at 392.

Nevertheless, while recognizing that they are not binding, the court views the Commission's policy statement contained in § 1B1.13 and the commentary thereto as providing guidance regarding the types of reasons that may be deemed sufficiently "extraordinary and compelling" to warrant compassionate release.  *See United States v. Thompson*, 984 F.3d 431, 433 (5th Cir.) ("Although not dispositive, the commentary to § 1B1.13 informs [the court's] analysis as to what reasons may be sufficiently 'extraordinary and compelling' to merit compassionate release."), *cert. denied*, 141 S. Ct. 2688 (2021); *United States v. Rivas*, 833 F. App'x 556, 558

---

[2] In Application Note 1 to § 1B1.13 of the U.S.S.G., the Commission defined "extraordinary and compelling reasons" to include the following four categories of circumstances:  (i) certain medical conditions of the defendant; (ii) the defendant is 65 years or older and meets other requirements; (iii) the defendant's family has specified needs for a caregiver; and (iv) other reasons in the defendant's case that establish an extraordinary and compelling reason.  U.S.S.G. § 1B1.13 cmt. n.1.

[3] U.S.S.G. § 1B1.13 was last amended on November 1, 2018.  The Commission has, to date, been unable to amend § 1B1.13 to incorporate the changes wrought by the First Step Act due to the lack of a quorum.  The Commission consists of seven voting members and, per statute, requires four members for a quorum to amend the guidelines.  28 U.S.C. §§ 991(a), 994(a).  At present, the Commission has only one voting member.

(5th Cir. 2020) (upholding denial of compassionate release and recognizing that the court was guided in its analysis by the commentary to U.S.S.G. § 1B1.13).  A review of dictionary definitions also sheds light on the meaning of these terms.  The word "extraordinary" is defined as "going beyond what is usual, regular, or customary . . . exceptional to a very marked extent," whereas the word "compelling" is defined as "forceful . . . demanding attention . . . convincing." *Extraordinary*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2007); *Compelling*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2007); *see United States v. Mitchell*, No. 15-20609, 2021 WL 1827202, at *2 (E.D. Mich. May 7, 2021).  "Courts have interpreted 'extraordinary' in the context of compassionate release as 'beyond what is usual, customary, regular, or common,' and a 'compelling reason' as 'one so great that irreparable harm or injustice would result if the relief is not granted.'"  *Mitchell*, 2021 WL 1827202, at *2 (quoting *United States v. Murphy*, No. 15-20411, 2020 WL 2507619, at *5 (E.D. Mich. May 15, 2020); *United States v. Sapp*, No. 14-20520, 2020 WL 515935, at *3 (E.D. Mich. Jan. 31, 2020)).

### 1.   Change in the Sentencing Law

In his motion, Scruggs seeks compassionate release due to a post-conviction change in sentencing laws—namely, a change to 21 U.S.C. § 851 enhancements as provided for in § 401 of the First Step Act.  Scruggs, however, did not receive a § 851 enhancement, and, thus, § 401 is inapplicable to his circumstances.  Scruggs also complains that he would not be considered a career offender if sentenced today.  At the time of his sentencing, he was classified as a career offender.

Scruggs relies on a series of decisions in support of his contention that, due to a change in the law, he would receive a lesser sentence if sentenced today because a career offender

enhancement would not be applied.  *See Mathis v. United States*, 579 U.S. 500, 519-20 (2016); *United States v. Tanksley*, 848 F.3d 347, 349-52 (5th Cir. 2017); *United States v. Hinkle*, 832 F.3d 569, 572-77 (5th Cir. 2016).  Scruggs points out that his prior Texas state convictions for delivery of marijuana and possession with intent to deliver a controlled substance are no longer viable predicate offenses for application of the career offender enhancement under the Sentencing Guidelines because they do not qualify as controlled substance offenses.  *See Tanksley*, 848 F.3d at 352.  The holdings in these cases, however, do not set forth a new rule of constitutional law that was made retroactive to cases on collateral review.  *See In re Lott*, 838 F.3d 522, 523 (5th Cir. 2016); *Lopez v. United States*, No. A-17-CA-0099-SS, 2017 WL 1284946, at *2-3 (W.D. Tex. Apr. 5, 2017).  Nevertheless, Scruggs maintains that he is entitled to a sentence reduction because, in the absence of the career offender enhancement, the applicable sentencing range for his offense of conviction would have been substantially less than the sentenced imposed.

Scruggs overlooks the fact, however, that the statutory maximum sentence was life in prison, and if the lower sentencing range had been deemed insufficient, the sentencing court could have departed upward based on the inadequacy of the calculated sentence.  In fact, in Scruggs's Presentence Investigation Report ("PSR"), Probation noted:

> Pursuant to U.S.S.G. § 5K2.21, a departure may be warranted to reflect the actual seriousness of the offense based on conduct in an underlying charge dismissed as part of a plea agreement in the case, and that did not enter into the determination of the applicable guideline range.  The Indictment charged the defendant with being a Felon in Possession of a Firearm; three counts of Possession of an Unregistered Firearm; Possession of Equipment, Chemical, Product, or Material Which May be Used to Manufacture a Controlled Substance; and three counts of Possession of a Firearm in Furtherance of a Drug Trafficking Crime (where the firearms were sawed-off shotguns), along with the count of conviction.

> However, the defendant has pled guilty only to Count 6.  The Plea Agreement stipulates that the Government will dismiss any remaining charges against this

8

defendant after he is sentenced for Count 6.  Therefore, the remaining eight counts, which involve three dangerous weapons, were not considered in determining the applicable guideline range.  The Court may consider this information, and information in the Impact of Plea Agreement section of this report, when determining the sentence to impose against Scruggs.

Moreover, a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A)(i) remains discretionary, and "a change in law alone does not rise to the level of extraordinary and compelling circumstances.  If the Court were to hold otherwise, 'every inmate who might receive a reduced sentenced today would be eligible for compassionate release . . . .'" *United States v. Ross*, No. 3:08-CR-0167-B-3, 2020 WL 3977113, at *2 (N.D. Tex. July 14, 2020) (quoting *United States v. Cisneros*, No.  99-00107, 2020 WL 3065103, at *3 (D. Haw. June 9, 2020)); *see United States v. Jarvis*, 999 F.3d 442, 444 (6th Cir. 2021) ("If every defendant who received a longer sentence than the one he would receive today became eligible for compassionate release, the balance Congress struck would come to naught."); *United States v. Thacker*, 4 F.4th 569, 574 (7th Cir. 2021) ("[T]here is nothing 'extraordinary' about leaving untouched the exact penalties that Congress prescribed and that a district court imposed for particular violations of a statute."); *United States v. Loggins*, 966 F.3d 891, 893 (8th Cir. 2020), *cert. denied*, 141 S. Ct. 2741 (2021).  The mere fact that the career offender enhancement under U.S.S.G. § 4B1.1 would not be applied if Scruggs were sentenced today does not automatically entitle him to a reduction in sentence.  *See United States v. Gharib*, No. 21-40779, 2022 WL 1565352, at *1 (5th Cir. May 18, 2022); *United States v. Spencer*, 521 F. Supp. 3d 606, 610 (E.D. Va.), *aff'd*, 853 F. App'x 833 (4th Cir. 2021).  Given the nature and circumstances of Scruggs's offense of conviction, the dismissed firearms and drug charges, as well as his criminal history, the court is not persuaded

that Scruggs's early release from imprisonment is warranted due to a change in the sentencing laws.

        2.    <u>Rehabilitation</u>

Scruggs also maintains that his post-sentence rehabilitation—evidenced by the programs he has completed, his lack of incident reports, and his employment with FPC Farms—establishes extraordinary and compelling reasons for compassionate release.  While the court may consider rehabilitation efforts, "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t); *see Shkambi*, 993 F.3d at 392; *United States v. Brooker*, 976 F.3d 228, 237-38 (2d Cir. 2020) (holding that a district court's discretion in sentencing is broad; however, there is a "statutory limit on what a court may consider to be extraordinary and compelling . . . [and] '[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason.'" (quoting 28 U.S.C. § 994(t))); *United States v. Hudec*, No. CR 4:91-1-1, 2020 WL 4925675, at *5 (S.D. Tex. Aug. 19, 2020) ("While the Court is permitted to consider post-sentencing rehabilitation in determining whether to grant an eligible defendant a sentence reduction, it is not authorized to grant a reduction based upon post-sentencing rehabilitation alone.").  In fact, "[m]aking good use of one's time in prison is not uncommon, and indeed is expected." *United States v. Blanco*, No. 16-CR-408 (CS), 2021 WL 706981, at *2 (S.D.N.Y. Feb. 22, 2021) (quoting *United States v. Alvarez*, No. 89-CR-229, 2020 WL 4904586, at *7 (E.D.N.Y. Aug. 20, 2020)).

Although Scruggs lists a number of commendable achievements and laudable goals, he has not presented sufficiently extraordinary and compelling accomplishments or circumstances to merit compassionate release under the facts of this case. *See United States v. Lewis*, No.

17-CR-28-FPG, 2021 WL 4519795, at *3 (W.D.N.Y. Oct. 4, 2021) (finding defendant's efforts at rehabilitation and plans to start a new life elsewhere to be commendable and recognizing the unusual burdens he faced in prison but finding those considerations not to undermine the factors that led to his original sentence—his offense, his criminal history, and the need for deterrence); *accord United States v. Boyd*, No. 3:17-CR-37-TAV-DCP-4, 2021 WL 5094903, at *4 (E.D. Tenn. Nov. 2, 2021) (the court, while recognizing defendant's efforts to improve himself, did not find his rehabilitation efforts to be so extraordinary as to outweigh the other sentencing factors); *United States v. Willsey*, No. 3:00-cr-00438-HZ, 2021 WL 4462889, at *2 (D. Ore. Sept. 28, 2021) (although finding defendant's steps toward rehabilitation to be laudable, the court ruled that they did not present an extraordinary circumstance that would justify compassionate release, particularly given the seriousness of his offenses of conviction); *United States v. Rounds*, No. 10-CR-239S (2), 2021 WL 4437170, at *4 (W.D.N.Y. Sept. 28, 2021) (commenting that defendant's efforts at rehabilitating himself were laudable and should be continued, but concluding that they did not alone or in combination with his other arguments constitute an extraordinary and compelling reason for compassionate release).  Similarly, the court hopes that Scruggs will continue on the path to rehabilitation, but declines to exercise its discretionary authority under § 3582 at this time based on either a change in the sentencing laws or his rehabilitation efforts. *See Lewis*, 2021 WL 4519795, at *3.

      3.    <u>COVID-19</u>

      In his motion, Scruggs expresses concerns regarding the spread of COVID-19 among the prison population.  Nevertheless, as of July 19, 2022, the figures available at www.bop.gov list 2 inmates (out of a total inmate population of 1,236) and 0 staff members at FCI El Reno as having

confirmed positive cases of COVID-19, 478 inmates and 169 staff members who have recovered, and 1 inmate who succumbed to the disease.  Indeed, according to Scruggs's medical records, he tested positive for the disease on January 31, 2021, and, as of February 10, 2021, has recovered from the virus.  Moreover, Scruggs's medical records reflect that his only medical diagnosis is hyperlipidemia (high cholesterol), which the Centers for Disease Control and Prevention no longer list as a risk factor for COVID-19.  According to his BOP medical records, he has declined to take medication for the condition.  On January 14, 2021, when advised of laboratory results that showed elevated cholesterol levels, Scruggs told Spencer Zeavin, M.D./C.D., that he "would rather exercise and watch cholesterol in diet than [take] medications."  Otherwise, Scruggs, age 55, is in good health, is ambulatory, and is able to engage in all normal activities of daily living. He is classified as a BOP Medical Care Level 1 inmate, which means that he is generally healthy or has limited medical needs.  Thus, it appears that the facility where Scruggs is housed is handling the outbreak appropriately and providing adequate medical care.

Although Scruggs expresses legitimate concerns regarding COVID-19, he does not establish that the BOP cannot manage the outbreak within his correctional facility or that the facility is specifically unable to treat Scruggs, if he were to contract the virus once again and develop COVID-19 symptoms, while incarcerated.  *See United States v. Rodriguez*, 27 F. 4th 1097, 1100 (5th Cir. 2022) ("[A] generalized fear of COVID-19 does not automatically entitle a prisoner to release.") (citing *Thompson*, 984 F.3d at 435); *Raia*, 954 F.3d at 597 ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); *United States v. Banks*,

12

No. CR 15-0080-02, 2020 WL 6839267, at *4 (W.D. La. Nov. 20, 2020) ("This Court cannot equate the generalized fear of COVID-19 to an extraordinary and compelling reason to support compassionate release, nor will it undermine BOP's criteria to determine eligibility for sentence reductions or home confinement."); *United States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex. June 2, 2020) ("General concerns about the spread of COVID-19 or the mere fear of contracting an illness in prison are insufficient grounds to establish the extraordinary and compelling reasons necessary to reduce a sentence." (quoting *United States v. Koons*, 455 F. Supp. 3d 285, 292 (W.D. La. 2020))); *United States v. Clark*, 451 F. Supp. 3d 651, 656 (M.D. La. 2020) (finding the defendant had failed to present extraordinary and compelling reasons to modify his prison sentence because he "does not meet any of the criteria set forth by the statute" and he "cites no authority for the proposition that the fear of contracting a communicable disease warrants a sentence modification").  Furthermore, contracting the virus while incarcerated, even in conjunction with preexisting health conditions, is insufficient to establish exceptional and compelling circumstances warranting compassionate release.  *See United States v. Jackson*, No. 3:16-CR-196-L-1, 2020 WL 4365633, at *2 (N.D. Tex. July 30, 2020) (finding that defendant had failed to present extraordinary and compelling reasons for compassionate release despite suffering from previous underlying health conditions and testing positive for COVID-19).

Courts have repeatedly denied COVID-19-based motions for compassionate release filed by inmates who, like Scruggs, have already contracted and recovered from the virus.  *See*, *e.g.*, *United States v. Gipson*, 829 F. App'x 780, 781 (9th Cir. 2020) (affirming denial of compassionate release for a defendant with preexisting conditions who had already contracted

COVID); *United States v. Marley*, No. 16-CR-374 (VEC), 2020 WL 7768406, at *2 (S.D.N.Y. Dec. 30, 2020) ("[A] defendant's successful recovery from COVID-19 weighs against granting that defendant compassionate release." (quoting *United States v. Delorbe-Luna*, No. 18-CR-384, 2020 WL 7231060, at *2 (S.D.N.Y. Dec. 7, 2020))); *United States v. Stockman*, No. H-17-116-2, 2020 WL 5269756, at *3 (S.D. Tex. Aug. 26, 2020) (noting that when an inmate is infected and recovers from COVID-19, the courts have found the risks of infection or severe symptoms or effects because of underlying conditions change and diminish); *United States v. Baker*, No. CR 16-179, 2020 WL 4584195, at *4 (E.D. La. Aug. 10, 2020) ("Courts have denied COVID-19-based motions for compassionate release filed by inmates who have already contracted the virus."); *United States v. Shrout*, No. 15-CR-438, 2020 WL 3483703, at *4 (D. Or. June 26, 2020) ("[Defendant] has already contracted COVID-19 and, crucially, the BOP has properly managed the disease.").

Moreover, the BOP is in the process of administering the COVID-19 vaccine to inmates and staff. To date, the BOP has administered approximately 324,597 doses of the vaccine. According to www.bop.gov, FCI El Reno, where the defendant is housed, has fully inoculated 1,200 inmates and 227 staff members. Indeed, according to Scruggs's BOP medical records, he received the Janssen vaccine on April 12, 2021. In the Fifth Circuit and elsewhere, courts have denied early release to inmates with a variety of medical conditions who have been vaccinated for COVID-19. *See United States v. Walker*, No. 20-cr-20027, 2021 WL 2474088, at *3 (C.D. Ill. June 17, 2021) (holding that because defendant was fully vaccinated, his underlying health conditions—diabetes, heart disease, high blood pressure, asthma, and substance abuse—alone, were insufficient to establish extraordinary and compelling reasons justifying compassionate

release); *United States v. Parham*, No. 1:19-CR-133-LG-RHW-1, 2021 WL 1911899, at *2 (S.D. Miss. May 12, 2021) (finding that "generalized concerns of contracting COVID-19[] are not an 'extraordinary and compelling reason'" where the defendant had received the COVID-19 vaccine); *United States v. Meyer*, No 1:14-cr-00148-01-MC, 2021 WL 1895240, at *1-2 (D. Ore. May 11, 2021) (denying compassionate release to inmate with heart disease, obesity, hyperlipidemia, and a history of smoking because he was fully vaccinated and there was a low infection rate at the facility where he was housed); *United States v. Schad*, No. CR 2:17-225-3, 2021 WL 1845548, at *4 (S.D. Tex. May 5, 2021) (denying compassionate release where the defendant had been fully vaccinated against COVID-19); *United States v. Wakefield*, No. 1:19-CR-00095-MR-WCM, 2021 WL 640690, at *3 (W.D.N.C. Feb. 18, 2021) ("Because [the defendant] has already contracted the virus and recovered without complication, and because he is in the process of being vaccinated, the [d]efendant cannot meet his burden of establishing that his COVID-19 risk is an extraordinary and compelling reason for his release."); *United States v. Grummer*, No. 08-CR-4402-DMS, 2021 WL 568782, at *2 (S.D. Cal. Feb. 16, 2021) (denying compassionate release and noting that "[a]lthough Defendant suffers from several chronic medical conditions, his vaccination significantly mitigates the risk that he will contract COVID-19"); *United States v. Beltran*, No. 6:16-CR-00004, 2021 WL 398491, at *3 (S.D. Tex. Feb. 1, 2021) (denying compassionate release to a high-risk inmate with myriad underlying medical conditions who received the vaccine, finding that "vaccination significantly reduces [the] risk of contracting COVID-19 or experiencing complications related to a COVID-19 infection"); *accord United States v. Nunez-Arias*, No. CR H-16-436, 2021 WL 1537323, at *3 (S.D. Tex. Apr. 19, 2021).

15

C.   Section 3553(a) Factors

The court further finds that compassionate release is not merited in light of the applicable factors set forth in 18 U.S.C. § 3553(a).  *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release); *United States v. Shorter*, 850 F. App'x 327, 328 (5th Cir. 2021) (finding that the court did not abuse its discretion in denying compassionate release after balancing the § 3553(a) factors); *Keys*, 846 F. App'x at 276; *Shkambi*, 993 F.3d at 392; *Thompson*, 984 F.3d at 435 n.11 (collecting cases); *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020).  Scruggs's offense of conviction stems from his possession of a firearm in furtherance of a drug-trafficking crime.  On October 25, 2005, law enforcement officers investigated a report of illegal hunting at a deer camp.  At the reported location, officers discovered a camper trailer that was being used as the residence of Scruggs and Mariann Henneken ("Henneken"), as well as two smaller trailers used for storage.  Initially, only Henneken responded to the officers.  While talking to Henneken, officers observed evidence of a methamphetamine-manufacturing operation.  Eventually, the officers encountered Scruggs, at which time he went into the camper, locked the door, and barricaded himself inside.  Subsequently, an officer saw a fuming liquid being poured from the corner of the trailer.  The officers ordered Scruggs to come out of the trailer, but received no response.  After an approximately four-and-a-half hour standoff, officers used gas devices to force Scruggs to exit the trailer.

A search of the trailer revealed a revolver with five live rounds, which had been reported stolen.  Officers also discovered three firearms that were weapons made from a shotgun, considered short-barreled shotguns, in one of the smaller trailers.  Further, officers found several

16

items of drug paraphernalia, equipment and chemicals used to manufacture methamphetamine, 1.36 grams of marijuana, and 10.56 grams of methamphetamine, as well as two rifles, a handgun, three semiautomatic rifles, an additional revolver, and assorted ammunition.  The investigation also revealed an all-terrain vehicle ("ATV") with an altered serial number, another ATV that had been reported stolen, and a travel trailer that had been reported stolen.  Scruggs admitted that he had been manufacturing methamphetamine at the compound.

Scruggs's criminal history includes prior convictions for delivery of marijuana, possession of a controlled substance with intent to deliver, and leaving the scene of an accident after inflicting property damage.  Scruggs had a previous term of probation revoked.  In *Boyd*, the defendant had a similar history of violating probation, including committing the offense of conviction while on probation.  2021 WL 5094903, at *3.  The court found that "defendant's history of violating probation calls into question his respect for the law and whether he would abide by his conditions of supervised release in this case if his motion for compassionate release were granted."  *Id*.  This court shares the same concerns in reference to Scruggs.  Moreover, Scruggs's PSR, prepared by Probation on October 5, 2006, reflects that he has a history of substance abuse.  In short, Scruggs's "criminal history and conduct reflect an unabated propensity for crime."  *United States v. Padilla*, No. H-14-174-1, 2021 WL 1517855, at *5 (S.D. Tex. Apr. 16, 2021).

"Compassionate release is discretionary, not mandatory, and [may] be refused after weighing the sentencing factors of 18 U.S.C. § 3553(a)."  *Chambliss*, 948 F.3d at 693; *see Gharib*, 2022 WL 1565352, at *1.  Where, as here, a prisoner has engaged in "severe" criminal conduct and has a criminal history, the district court has discretion to deny compassionate release under the circumstances.  *Chambliss*, 948 F.3d at 693-94; *accord Gharib*, 2022 WL 1565352, at

*1 (refusing to consider the defendant's contention that extraordinary and compelling reasons justified compassionate release due to the defendant's no longer being subject to the career offender enhancement when district court found that the § 3553(a) factors outweighed granting relief); *Keys*, 846 F. App'x at 276 (rejecting Defendant's argument that the court gave too much weight to his criminal history and finding that "a mere disagreement with the court's balancing of the § 3553(a) factors . . . is not a sufficient ground for reversal").  In view of the nature and circumstances of his offense of conviction, his criminal history, and his history of substance abuse, the court cannot conclude that Scruggs's early release from prison would afford adequate deterrence or protect the public, as he continues to pose a danger to other persons and to the community as a whole.

### D.    Home Confinement

Scruggs maintains that the court should place him in home confinement in view of the risk of contracting COVID-19 while in prison.  Nevertheless, the BOP has the exclusive authority to determine where a prisoner is housed; thus, the court is without authority to order home confinement.  18 U.S.C. § 3621(b); *Cheek v. Warden of Fed. Med. Ctr.*, 835 F. App'x 737, 739 (5th Cir. 2020) (holding that "the pandemic did not create judicial authority to grant home confinement"); *United States v. Donnell*, 476 F. Supp. 3d 514, 522 (E.D. Tex. 2020); *Ambriz v. United States*, 465 F. Supp. 3d 630, 633 (N.D. Tex. 2020); *United States v. Miller*, No. 2:17-CR-015-D (02), 2020 WL 2514887, at *1 (N.D. Tex. May 15, 2020) ("[N]either the CARES Act nor the First Step Act authorizes the court to release an inmate to home confinement."). Further, the BOP's decision regarding home confinement is not subject to judicial review.  *See* 18 U.S.C. § 3621(b); *United States v. Powell*, No. CR 15-496-4, 2020 WL 2848190, at *2 n.5

18

(E.D. Pa. June 2, 2020) ("[T]o the extent that [Defendant] seeks to appeal the prison's denial of home confinement, such decision is not reviewable by this Court.").  Indeed, it is well established that "[n]o inmate has a constitutional right to be housed in a particular place or any constitutional right to early release."  *Cheek*, 835 F. App'x at 740.  As a consequence, "[i]t is not for a court to step in and mandate home confinement for prisoners, regardless of an international pandemic."  *Id*.

Furthermore, the BOP has instituted a comprehensive management approach that includes screening, testing, appropriate treatment, prevention, education, and infection control measures in response to COVID-19.  In response to a directive from the former United States Attorney General in March 2020, the BOP immediately began reviewing all inmates who have COVID-19 risk factors, as described by the CDC, for the purpose of determining which inmates are suitable for placement on home confinement.  *See United States v. Collins*, No. CR 04-50170-04, 2020 WL 1929844, at *3 (W.D. La. Apr. 20, 2020).  The BOP notes that inmates need not apply to be considered for home confinement, as this is being done automatically by case management staff.  Since March 26, 2020, the BOP has placed 44,824 inmates on home confinement.  The March 2020 directive is limited to "eligible at-risk inmates who are non-violent and pose minimal likelihood of recidivism and who might be safer serving their sentences in home confinement rather than in BOP facilities."  *United States v. Castillo*, No. CR 2:13-852-1, 2020 WL 3000799, at *3 (S.D. Tex. June 2, 2020).

In his Memorandum to the BOP dated March 26, 2020, former Attorney General Barr acknowledges that the Department of Justice ("DOJ") has an obligation to protect both BOP personnel and inmates.  He also notes that the DOJ has the responsibility of protecting the public,

19

meaning that "we cannot take any risk of transferring inmates to home confinement that will contribute to the spread of COVID-19 or put the public at risk in other ways." The Attorney General issued a subsequent Memorandum to the BOP on April 3, 2020, in which he emphasizes that police officers protecting the public face an increased risk from COVID-19 and cannot avoid exposure to the virus, with their numbers dwindling as officers who contract the virus become ill or die or need to recover or quarantine to avoid spreading the disease. Accordingly, he cautions:

> The last thing our massively over-burdened police forces need right now is the indiscriminate release of thousands of prisoners onto the streets without any verification that those prisoners will follow the laws when they are released, that they have a safe place to go where they will not be mingling with their old criminal associates, and that they will not return to their old ways as soon as they walk through the prison gates.

As the court noted in *United States v. Preston*, "[t]he best predictor of how [Defendant] will behave if he were to be released is how he behaved in the past, and his track record is a poor one." No. 3:18-CR-307-K, 2020 WL 1819888, at *4 (N.D. Tex. Apr. 11, 2020) (quoting *United States v. Martin*, 447 F. Supp. 3d 399, 403 (D. Md. 2020)). Here, Scruggs's track record is similarly a poor one. There is no reason to believe that Scruggs would not revert to his prior drug-abusing and drug-manufacturing behavior, as well as the unlawful possession of firearms, if released from prison at this juncture.

III.   Conclusion

In sum, Scruggs has failed to satisfy his burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere. *See United States v. Dodge*, No. 17-323-01, 2020 WL 3668765, at *5 (W.D. La. July 6, 2020) (stressing that "the rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances"); *Koons*,

455 F. Supp. 3d at 291-92 (same).  As the court observed in *Koons*, rejecting the notion that it has "carte blanche" authority to release whomever it chooses, "[t]he Court cannot release every prisoner at risk of contracting COVID-19 because the Court would then be obligated to release every prisoner."  *Dodge*, 2020 WL 3668765, at *6; *Koons*, 455 F. Supp. 3d at 292.

Consistent with the foregoing analysis, Scruggs's *pro se* Motion for Reduction in Sentence (#43) is DENIED.

SIGNED at Beaumont, Texas, this 20th day of July, 2022.

_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE